RICHARD J. SYDNES,[1] PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7214–74.   Filed May 12, 1977.

---

[1] This case and that of R. Lugene Sydnes, docket No. 7548–74S, were consolidated for trial, but not for briefing or opinion.

Richard J. Sydnes, pro se.
*Albert B. Kerkhove,* for the respondent.

HALL, *Judge:* Respondent determined a $413.93 deficiency in petitioner's income tax for 1971. Other issues having been disposed of by agreement of the parties, the two issues remaining for decision are:

(1) Whether certain temporary support payments made by petitioner to his wife under a court order were made while the parties were "separated."

(2) Whether mortgage payments made by petitioner on property awarded to his former wife under a divorce decree were support payments or part of the property settlement.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner resided in Des Moines, Iowa, at the time he filed his petition. He filed an individual income tax return for 1971 as a single taxpayer.

Petitioner and R. Lugene Sydnes (Lugene) were married on June 15, 1946. On February 17, 1971, Lugene filed a petition for dissolution of marriage in the District Court, Polk County, Iowa. This petition set forth the property owned by petitioner and Lugene, including the family residence in Des Moines, certain household goods and furnishings, two automobiles, rental property in Des Moines, and certain life insurance policies. In this petition Lugene requested that she be granted temporary and permanent alimony, the family residence, the household goods and furnishings, and one of the automobiles. In addition, she requested the District Court to determine a fair and equitable division of the other property owned by her and petitioner.

Subsequently on March 8, 1971, Lugene filed an application for temporary support, fees and costs in which she requested temporary alimony of $100 per week. Thereafter, on April 1, 1971, the District Court entered a ruling on the application requiring petitioner to continue paying the usual family bills, including the home mortgage, taxes, groceries, etc., and

allowing Lugene to use the joint bank account to write checks (not in excess of $30 per check). The ruling also provided:

That an order for conciliator will be entered herein and during the time these proceedings are being conducted the parties will continue to live separately but in the same home.

During the period from April 1 to July 9, 1971, petitioner and Lugene both continued to reside at the family home, but they occupied separate bedrooms. Lugene kept her clothing and various items of personal property there and spent some period of time there nearly every day. However, Lugene often slept at the home of friends, rarely seeing petitioner and never eating meals with him. During this period petitioner spent $1,229.90 for Lugene's support. This amount reflected one-half of the household expenses petitioner had been ordered to pay under the April 1, 1971, District Court ruling, $15 per week for food, and the total amount of checks drawn by Lugene on the parties' joint bank account.

On July 9, 1971, the District Court entered a decree of dissolution of marriage. Prior to entry of this decree, petitioner and Lugene, through their attorneys, had attempted to resolve questions of alimony and property settlement. Petitioner was adamant in his opposition to granting his wife alimony in any amount.[2] As a result of the negotiations between the parties, an agreement was reached which was reflected in the District Court's decree. Under the terms of the decree, Lugene was granted title to the family residence and the rental property located in Des Moines. She was to assume and pay the existing mortgage on the family residence, while petitioner was to assume and pay the existing mortgage on the rental property. The latter mortgage had a principal balance of $8,473.62 on the date this decree was entered, and was scheduled to be paid in 150 monthly payments of $76.84 and one payment of $67.46. Lugene also was granted title to most of the household goods and furnishings, and one of the family automobiles. Petitioner was granted title to the other family automobile and certain items of personal property. The decree did not dispose of petitioner

---

[2] Petitioner had stated to Lugene's attorney that under no circumstances would he pay or agree to pay any support, maintenance, or alimony. He also had stated to Lugene that he would leave the country before he would pay her one cent of alimony.

and Lugene's life insurance or their joint bank account. In addition the decree provided:

It Is Further Ordered, Adjudged and Decreed
That [R. Lugene Sydnes] shall have no alimony nor is she entitled to any alimony.

On his 1971 income tax return petitioner reported gross income of $16,777.56. He deducted $1,229.90 as temporary support for Lugene for April through July 1971. Petitioner also deducted as alimony the mortgage payments, totaling $545.30, made by him for the period July 9 through December 31, 1971, on the rental property granted to Lugene under the July 9, 1971, decree.

Respondent disallowed both deductions in their entirety.

OPINION

The first issue for decision is whether certain temporary support payments made by petitioner under a court order were made while he was "separated" from his wife. If the payments were made while petitioner and his wife were "separated," as petitioner claims, then the amounts are includable in her gross income under section 71(a)(3),[3] and petitioner is entitled to a deduction for those amounts under section 215(a).[4] However, if petitioner and his wife were not "separated" when the payments were made, as respondent claims, then the amounts are not includable in her gross income and petitioner is not entitled to a deduction.

In February 1971, R. Lugene Sydnes filed a petition in District Court, Polk County, Iowa, seeking a divorce from petitioner. The following month she filed an application for

---

[3] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

Sec. 71(a)(3) provides:

(3) Decree for support.—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly.

[4] Sec. 215(a) provides in pertinent part:

(a) General Rule.—In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * *

temporary support. The District Court's ruling on this application required petitioner to pay certain household expenses and to allow Lugene to write checks on a joint bank account. The ruling also provided that "during the time these proceedings are being conducted the parties will continue to live separately but in the same house." Thereafter petitioner and Lugene continued to reside in the same house until the District Court entered a decree of dissolution of marriage. However, during the intervening period, petitioner and Lugene occupied separate bedrooms, rarely seeing one another and never eating meals together. They had come to a parting of ways and had ceased living together as husband and wife and had no intention of resuming marital relations.

Respondent asserts that petitioner and Lugene were not "separated" within the meaning of section 71(a)(3) during the period from April 1 through July 9, 1971, since they both lived in the same residence during that period. In support of his assertion respondent relies upon section 1.71–1(b)(3)(i), Income Tax Regs., which provides that where a husband and wife are "separated and living apart," payments made under a decree for support are includable in the gross income of the wife. Respondent interprets this regulation and section 71(a)(3) as imposing a requirement that a husband and wife live in separate residences in order for payments made under a decree for support to be includable in the wife's gross income and deductible by the husband, and we agree.

Prior to 1942, alimony payments were not taxed to the recipient and no deduction for such payments was allowed to the payor. *Gould v. Gould,* 245 U.S. 151 (1917), sec. 19.24–1, Regs. 103. Congress in 1942 made alimony and separate maintenance payments taxable to the recipient and deductible by the payor. Secs. 22(k) and 23(u), I.R.C. 1939;[5] sec. 120,

---

[5] Sec. 22(k), I.R.C. 1939, provided:

ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. This subsection shall not apply to that part of any such periodic payment which the

Revenue Act of 1942, ch. 619, 56 Stat. 816–817. However, this treatment extended only to payments made pursuant to a decree of divorce or separate maintenance or a written agreement incident to such divorce or separation. Sec. 22(k), I.R.C. 1939. In 1954 Congress extended this tax treatment to payments made pursuant to a written separation agreement and a decree of support (sec. 71(a)(2) and 71(a)(3)) in order to end the "discriminat[ion] against husbands and wives who have separated although not under a court decree." S. Rept. No. 1622, 83d Cong., 2d Sess. 10 (1954).[6]

The statutory history of the 1954 changes emphasizes that the factual status of whether the parties are separated rather than their marital status under local law is the key in determining whether amounts paid under a court order are

---

terms of the decree or written instrument fix, in terms of an amount of money or a portion of the payment, as a sum which is payable for the support of minor children of such husband. In amount specified in the decree or written instrument, for the purpose of applying the preceding sentence, such payment, to the extent of such sum payable for such support, shall be considered a payment for such support. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection; except that an installment payment shall be considered a periodic payment for the purposes of this subsection if such principal sum, by the terms of the decree or instrument, may be or is to be paid within a period ending more than 10 years from the date of such decree or instrument, but only to the extent that such installment payment for the taxable year of the wife (or if more than one such installment payment for such taxable year is received during such taxable year, the aggregate of such installment payments) does not exceed 10 per centum of such principal sum. For the purposes of the preceding sentence, the portion of a payment of the principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be considered an installment payment for the taxable year in which it is received. (In cases where such periodic payments are attributable to property of an estate or property held in trust, see section 171(b).)

Sec. 23(u), I.R.C. 1939, provided:

In computing net income there shall be allowed as deductions:

* * *

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22(k) or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

[6] The Sente Finance Committee stated that sec. 71(a)(3) was added to the House bill "to cover cases where amounts made under a court decree for support have not been called separate maintenance payments." S. Rept. No. 1622, 83d Cong., 2d Sess. 11 (1954). It further stated in its detailed discussion of the changes it had made in the House bill that "Subsection [71] (a)(3) is applicable only if the wife is separated from her husband, but such separation need not be under a decree." S. Rept. No. 1622, 83d Cong., 2d Sess. 171 (1954).

includable in the recipient's gross income and deductible by the payor. See S. Rept. No. 1622, 83d Cong., 2d Sess. 10 (1954). We conclude that "separated" as used in the statute and "separated" as used in the regulations mean living in separate residences. Only when living in separate residences do the parties incur the duplicate living expenses normally incurred by divorced or separated couples. In the absence of such duplication, and in the absence of any legislative history cited to us which expressly elucidates what Congress intended, we find it hard to believe that a mere continuation of shared living expenses following estrangement was intended by Congress to generate a deduction when the identical expenses would have been unavailable to the husband as a deduction before the estrangement took place. Moreover, the Court should not be required to delve into the intimate question of whether husband and wife are in fact living apart while residing in the same house. We therefore conclude that petitioner and Lugene were not separated during the period from April 1 to July 9, 1971, and that petitioner is not entitled to a deduction under section 215 for the temporary support payments made to Lugene.

The final issue for decision is whether mortgage payments made by petitioner on property awarded to Lugene under the decree of divorce were part of a property settlement or were support payments. Petitioner contends that the payments are in substance alimony and therefore properly includable in Lugene's gross income and deductible by him under section 215. Although mortgage payments made by a husband on property owned by his former wife may qualify as payments in discharge of a general obligation of support (alimony), *Richards v. United States,* an unreported case (N.D. Ohio 1973, 32 AFTR 2d 73–5432); *Mace v. United States,* an unreported case (S.D. Cal. 1964, 14 AFTR 2d 5381, 64–2 USTC par. 9732), the question of whether such payments are part of a property settlement or constitute alimony is essentially a question of fact. *Joslin v. Commissioner,* 52 T.C. 231, 236 (1969), affd. 424 F.2d 1223 (7th Cir. 1970); *Newbury v. Commissioner,* 46 T.C. 690, 694 (1966).

Courts have recognized several factors in determining whether payments are part of a property settlement or are alimony. Among the factors suggesting that the payments are

part of a property settlement are: the nonterminability of the payments upon the death or remarriage of the wife *(Land v. Commissioner,* 61 T.C. 675, 683 (1974), and cases cited therein); the nonfluctuating amount of the monthly payments for the benefit of the wife *(Land v. Commissioner, supra);* and the existence of a fixed sum to be paid for the benefit of the wife *(Land v. Commissioner, supra).* Here, the District Court decree which dissolved the marriage of petitioner and Lugene provided that petitioner was to assume and pay the existing mortgage of the rental property; no provision was made therein for termination of the payments upon the death or remarriage of Lugene. The monthly payments did not vary in spite of the fact that Lugene's needs might fluctuate, nor were the payments geared in any manner to petitioner's own earnings. The decree further provided that Lugene "shall have no alimony, nor is she entitled to any alimony." Moreover, throughout the negotiations petitioner steadfastly refused to pay Lugene any alimony.

In spite of these factors suggesting that the mortgage payments were part of a property settlement, petitioner argues that the payments were in lieu of alimony. In support of his argument he relies upon two factors. First, that under Iowa law, Lugene would have been entitled to an award of alimony. Second, the unequal division of the parties' property compels a conclusion that the payments were in lieu of alimony.

Initially we note that under Iowa law an award of alimony is not required, but may be awarded under appropriate circumstances. See *In re Marriage of Boyd,* 200 N.W.2d 845, 853–854 (Iowa 1972); *Schantz v. Schantz,* 163 N.W.2d 398 (Iowa 1968). In addition, there is not sufficient evidence to determine whether an unequal division of property in fact occurred. No evidence was presented with regard to the total assets of petitioner and Lugene in 1971, nor did the District Court decree make provision for division of the joint bank account or the parties' life insurance. In any event, an equal division of property is not required under Iowa law; on the contrary, property division is made in such manner as is justified under the facts and circumstances of each case. *Dillavou v. Dillavou,* 17 N.W.2d 393, 395 (Iowa 1945); Iowa Code Ann. sec. 598.21 (Supp. 1976). We therefore conclude

that the payments were part of a property settlement and not alimony, and that petitioner is not entitled to deduct the mortgage payments under section 215.

*Decision will be entered under Rule 155.*