**Richard J. SYDNES, Appellant,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

No. 77–1919.

United States Court of Appeals, Eighth Circuit.

Submitted May 19, 1978.

Decided June 8, 1978.

Richard Sydnes, pro se.

M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Richard W. Perkins and Richard D. Buik (argued), Tax Division, Dept. of Justice, Washington, D.C., on brief for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, LAY and HENLEY, Circuit Judges.

VAN OOSTERHOUT, Senior Circuit Judge.

This is a timely appeal by taxpayer, Richard J. Sydnes, from final decision of the Tax Court determining deficiency in income tax due from the taxpayer for the year 1971 in the amount of $406.20. Jurisdiction in this court exists under 26 U.S.C. § 7482.[1]

The issues presented by this appeal are:

I. Whether the Tax Court correctly found taxpayer and his wife were not separated within the meaning of 26 U.S.C. § 71(a)(3) and thus taxpayer was not entitled to deduct from his gross income support payments made pursuant to a separate maintenance order in an Iowa divorce proceeding.

II. Whether the Tax Court correctly determined that mortgage payments made in 1971 by taxpayer pursuant to the final dissolution of marriage decree were part of a property settlement and thus not deductible as alimony.

We reverse the Tax Court on Issue I and affirm on Issue II for the reasons hereinafter set forth.

### I.

Petitioner, a resident of Des Moines, Iowa, filed a 1971 income tax return as a single taxpayer. He deducted from his income $1229.90 as temporary support money paid as ordered by the state court and $545.30 as payment on a rental property mortgage as ordered by the final dissolution

---

1. This case was consolidated for trial with that of R. Lugene Sydnes, No. 7548–74S, but not for briefing or opinion. The decision in such case is not in the record and no appeal in that case is before us.

The decision below is reported at 68 T.C. 170 (1977).

decree. Taxpayer and his wife, R. Lugene Sydnes, were married on June 15, 1946. They had two daughters, both of whom had married and left the home. Lugene on February 17, 1971, filed a petition for dissolution of marriage in the Polk County, Iowa, district court. She asked for temporary and permanent alimony and the award of specified property owned by the parties. On March 18 Lugene filed an application for temporary support. On April 1 an order was entered requiring petitioner to pay the usual family bills and to allow Lugene to write checks on a joint account not to exceed $30.00 per check. The $1229.90 deduction is based on disbursements made by taxpayer pursuant to such order.

On July 9, 1971, a decree of dissolution of marriage was entered and filed which provided that substantial property be transferred to the wife, including a duplex upon which the principal payment remained due on a mortgage in the amount of $8,473.62, which the taxpayer agreed to assume and pay on an installment basis in accordance with the mortgage provisions. Lugene was awarded the home, most of the personal property and an automobile. The total assets of the parties at the time of the decree is not set out in the record since the parties through negotiations had agreed upon the settlement. It would appear that the property settlement was liberal for the purpose of inducing a denial of alimony.[2]

Twenty-six U.S.C. § 71(a)(3) provides:

(3) *Decree for Support.*—If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance.

. . . . .

Treasury Regulations on income tax, 1954 Code, 26 C.F.R. § 1.71–1(b), make substantially the same provision.

▮ The Tax Court's disallowance of maintenance and support payments made under the support order is based upon its determination that the parties were not living separately during the pertinent period. The Tax Court holds:

We conclude that "separated" as used in the statute and "separated" as used in the regulations mean living in separate residences. Only when living in separate residences do the parties incur the duplicate living expenses normally incurred by divorced or separated couples.

We disagree with such holding to the extent that it holds that under no facts and circumstances can husband and wife live separately in the same residence. Neither the statute nor the regulations specifically state that in order to live separately or apart the parties cannot occupy separate quarters in the same residence. We believe the issue of whether the parties are living separately in the same residence presents a factual issue. We are of the view that the evidence in this case on this issue, which is not materially in dispute, establishes that the parties were living separately. The taxpayer testified:

Q. And you did see her in the home during that period too, did you not?

A. There was one instance in which her daughter was visiting us. My daughter was staying with me and Lugene came in while she was there and that's the only time.

Q. And did she reside after the filing of the petition in the front bedroom of the house?

A. She never occupied it to my knowledge.

Lugene testified that she took the front bedroom in the house. On cross-examination she testified that the defendant entered her bedroom on one occasion after April 1 to show her some pictures that he

---

2. The taxpayer at oral argument presented the court with a statement of his assets at the time of the divorce but such statement cannot be considered as it was not before the trial court.

In any event, it likely has no relevancy on the merits of this case as the property settlement was negotiated.

had taken on a trip to Hawaii. She was then asked:

Q. Was that not after the dissolution?

A. I actually don't remember because you went before. It was in June when you went.

She further testified:

Q. Did you see him the time you spent in your residence at 1656 Beaver?

A. No—well, there were a few times but basically I arranged to be there when he was not.

Lugene further testified that she stayed in her room on a number of nights, but that she also spent nights out at homes of friends. The undisputed record reflects that they had no meals together during this period and that except possibly in a few instances they never met face-to-face in the home.

The trial court did not make any express finding on the issue of whether the parties were living separately in their own home. Our examination of the record satisfies us that there is no substantial evidence to support a finding that the parties were not living separately during the pertinent period. We hold on the basis of the record in this case that the taxpayer and Lugene, while living in the same house, were living separately and apart during the period from April 1, 1971, to the time of the dissolution decree and that the taxpayer is entitled to deduct the support money advanced to Lugene in the amount of $1229.90 from his 1971 income pursuant to 26 U.S.C. § 71(a)(3).

## II.

We agree with the Tax Court's determination that the mortgage payments made on the duplex awarded the wife in the divorce decree were made pursuant to an agreed upon property settlement made by the parties after extensive negotiations and approved by the court. Mr. Marks, Lugene's attorney in the divorce proceedings, specifically testified that he had frequent talks with the taxpayer and his attorney with respect to a property settlement and alimony and that taxpayer and his counsel at all times insisted defendant would not agree to pay alimony and that by mutual agreement the decree was entered containing a specific provision reading:

It is further ORDERED, ADJUDGED AND DECREED

That the petitioner shall have no alimony nor is she entitled to any alimony.

Defendant makes some contention that the decree is ambiguous as to alimony as a paragraph of the decree relating to attorney's fees states that the attorney fee judgment shall not be dischargeable in bankruptcy for the reason that the same was earned in obtaining support and maintenance. Mr. Marks testified that this was a stock provision placed in decrees at that time.

The record as a whole supports the Tax Court's conclusion that the mortgage payments were made as a part of the property settlement and not as alimony. Accordingly, such payments are not deductible by the taxpayer. We affirm on this issue upon the basis of the Tax Court's published opinion.

This case is remanded to the Tax Court for further proceedings not inconsistent with the views expressed in this opinion and for computation of the tax liability for the year 1971. Each party shall be assessed one-half the costs in this court.