MARY K. BECK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Beck v. Commissioner
Docket No. 2250-81.
United States Tax Court
T.C. Memo 1982-499; 1982 Tax Ct. Memo LEXIS 251; 44 T.C.M. (CCH) 989; T.C.M. (RIA) 82499; August 30, 1982. *251 Held: Mortgage payments made by petitioner's former husband on residence awarded to petitioner by divorce decree are not alimony under sec. 71. Harland M. Britz, for the petitioner. Joan J. Fahlgren, for the respondent. WHITAKER
MEMORANDUM OPINION WHITAKER, Judge: Respondent determined deficiencies in petitioner's income tax for the years 1977 and 1978 in the amounts respectively of $516 and $517. The sole issue for decision is whether certain mortgage payments made by petitioner's former husband during these years are taxable to petitioner as alimony under section 71. [1]
*252 The case was submitted fully stipulated. At the time the petition was filed, petitioner resided in Toledo, Ohio. Unfortunately, the facts set forth in the stipulation and supplemental stipulation are almost too attenuated for a decision to be made. [2] The pertinent facts, such as they are, reflect that petitioner and her husband were divorced by a judgment of an Ohio Court entered on October 14, 1975. The judgment allocated to petitioner the marital residence, title to which was then apparently in petitioner's husband's name, and directed the husband to continue to pay the then existing mortgage together with taxes and insurance. Petitioner was also awarded the contents of the house, the lawn equipment and her automobile. The husband was directed to continue to make health insurance available through his employment and to pay petitioner's attorney's fee, but no alimony was awarded. There is no evidence at all as to what other property or assets, if any, were owned by the husband or by petitioner, or as to the earning potential of either party. Petitioner's tax returns for 1977 and 1978 show that she earned a modest income in each of these years. The supplemental stipulation *253 recites that each party paid his or her own living expenses other than the mortgage payments, insurance and taxes, paid by the former husband. The parties have further stipulated that petitioner's former husband "continued to reside in the marital residence" through October 1978, although he was directed by the divorce decree to vacate the premises. We do not know what significance, if any, we should attach to the word "reside," especially in view of the item next mentioned. Finally, the stipulation includes a copy of a document which purports to be a letter dated November 22, 1978, from the former husband's attorney to petitioner charging that because the parties "never ceased living together as husband and wife," the divorce decree was a sham and could be set aside. While the parties have stipulated that this document is a copy of a letter *254 from the former husband's attorney to petitioner, they have not agreed, as we interpret the stipulation, that the facts set out in the attorney's letter are correct. Therefore, we accept this document merely for what it purports to be, an attorney's negotiating proposal. We do not accept as facts the statements in the letter; [3] we do accept the 1975 divorce as valid and effective as of that date, in view of the language of the supplemental stipulation. We are left in this case with only the following operative facts: (1) Petitioner and her husband were divorced prior to the years in issue; (2) The decree of divorce, as part of the division of property, awarded the residence to petitioner and required petitioner's ex-husband to continue to make the mortgage payments and to pay taxes *255 and insurance; (3) Such payments were made during the years in issue by the former husband; (4) The divorce decree expressly declined to award alimony to petitioner; (5) During each of the years in issue petitioner earned approximately $10,000 and paid all of her living expenses other than mortgage payments, taxes and insurance. Petitioner argues at length that since the parties resided together "as husband and wife," based on the allegations in the attorney's letter which we do not accept as a fact, the mortgage payments were merely a contribution by the husband, or more properly ex-husband, to his own living expenses. Petitioner would have us hold that where divorced parties live together after the divorce, alimony ceases to be alimony. We consider this argument to be irrelevant since the facts as stipulated do not show that the parties cohabitated after divorce or that the divorce was a sham. Having disposed of the contention that there was no valid divorce, we must now decide whether or not the mortgage payments (and insurance and taxes) were incurred because of the marital or family relationship and were therefore taxable to petitioner under section 71(a)(1), as respondent *256 contends, or whether these payments by the former husband were part of the tax-free division of marital property in exchange for a release of petitioner's rights in her former husband's estate. [4] If the latter, then it is immaterial whether or not the payments constituted periodic payments because payable over a period of more than 10 years. See Blate v. Commissioner,34 T.C. 121, 127 (1960); section 1.71-1(b)(4), Income Tax Regs.[5]
*257 While we are not bound by the characterization of the payments by the parties or by the divorce court in the decree, [6] the characterization by the divorce court is one of the factors on which we may rely. Beard v. Commissioner,77 T.C. 1275, 1284 (1981). That factor clearly favors characterization of these payments as capital in nature. Respondent argues that the Ohio courts do not make a clear distinction between a division of property and alimony, which generally may be correct. Nevertheless, the divorce court here appears to have distinguished between the two. We have no basis for ignoring the plain language of this judgment. Another factor which tends to support characterization of the payments as capital is that they were fixed in amount and not subject to contingencies such as the death or remarriage of the recipient. See Beard v. Commissioner,supra. While the facts as to the mortgage are not in evidence here, the implication of the divorce decree *258 is that the mortgage payments continue for a time certain. Such is obviously the almost universal custom and practice. While the decree is ambiguous as to the taxes and insurance, we construe the decree to require the payment of those items only so long as the mortgage remains unpaid, and not to require payment in perpetuity. With respect to all these payments, there is no evidence they would be discontinued in the event of death or remarriage of either party, which indicates they are in the nature of debts arising from the property settlement rather than alimony payments. See Sydnes v. Commissioner,68 T.C. 170, 176-177 (1977), affd. in part and revd. in part, 577 F.2d 60 (8th Cir. 1978). Notwithstanding the fact that the insurance and taxes may vary slightly from year to year, these payments must be considered to be fixed in amount, which is also indicative of a property settlement. See Sydnes v. Commissioner,supra at 176-177. The evidence in the case is insufficient to enable us to make a determination as to any of the remaining seven factors by which we normally distinguish a property settlement from a support allowance. *259 See Beard v. Commissioner,supra. While this determination is ultimately to be decided upon all the facts and circumstances in the particular case, Beard v. Commissioner,supra, on the facts in this case we have no basis to go behind the divorce decree.[8] Whether or not is was a sham, as charged by the former husband's attorney in 1978, is a matter of pure speculation. The meager facts presented here are sufficient to overcome the presumption of correctness of the statutory notice. Therefore, we find for petitioner. Decision will be entered for the petitioner.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. With a relatively modest expenditure of time and effort on the part of counsel for each of the parties, a reasonably adequate record might have been made available to the Court in this case. If a case of this sort is to consume the time of this Court, counsel have an obligation to prepare and submit a complete and satisfactory record.↩
3. Prior to the filing of the supplemental stipulation, we advised both counsel that we would treat this document in this fashion in the absence of a stipulation as to the statements in the letter. We note that the supplemental stipulation states as a fact that the parties were divorced on October 14, 1975, thus confirming, at least for purposes of this record, the validity of the divorce.↩
4. Mortgage payments relating to real property awarded in a divorce proceeding have in other cases been characterized by us as part of a property settlement. See, e.g., Sydnes v. Commissioner,68 T.C. 170 (1977), revd. on another issue 577 F.2d 60 (8th Cir. 1978); Sharp v. Commissioner,T.C. Memo. 1972-159; Stiles v. Commissioner,T.C. Memo. 1981-711↩. 5. See also Estate of Thoda v. Commissioner,T.C. Memo. 1979-219. We note that respondent apparently contends that the mortgage payments are periodic payments under section 71(c)(2) because payable over a period of more than 10 years. However, the only indication as to the remaining term of the mortgage is the statement in the statutory notice that the payments "were required to be paid for more than ten years." While the statutory notice is sufficient to put the burden of proof on petitioner under the Rules of this Court, Rule 142, Tax Court Rules of Practice and Procedure↩, the inclusion of the statutory notice as one of the stipulated documents is not tantamount to a stipulation that each of the allegations in the statutory notice may be taken as a fact for purposes of the decision in the case. Accordingly, we have no actual evidence as to whether the remaining term of the mortgage exceeded 10 years.
6. Mirsky v. Commissioner,56 T.C. 664 (1971); Joslin v. Commissioner,52 T.C. 231, 236 (1969), affd. 424 F.2d 1223↩ (7th Cir. 1970).
8. See discussion in Mirsky v. Commissioner,supra at 674 and 675↩, as to the effect of language in a divorce decree. We note here that there is no ambiguity in the decree in this regard and we have no factual basis for any other characterization. Respondent's argument, based on language in the letter from the ex-husband's attorney, that the division of property "was not bargained for" is not based on anything in the record which we can properly consider.