William C. LYDDAN, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 1395, Docket 83–6022.

United States Court of Appeals, Second Circuit.

Argued June 10, 1983.

Decided Nov. 1, 1983.

Lorentz W. Hansen, White Plains, N.Y., for plaintiff-appellant.

Joan I. Oppenheimer, Tax Div., Dept. of Justice, Washington, D.C. (Michael L. Paup, Chief, Appellate Section, Tax Div., Dept. of Justice, Washington, D.C., Alan H. Nevas, U.S. Atty., D. Conn., New Haven, Conn., of counsel), for defendant-appellee.

Before OAKES, PRATT, Circuit Judges, and METZNER, District Judge *.

GEORGE C. PRATT, Circuit Judge:

Taxpayer William C. Lyddan appeals from a judgment of the United States District Court for the District of Connecticut, Thomas F. Murphy, *Judge*, which denied him a deduction under I.R.C. § 215 (1976) for $7,200 in alimony payments made to his wife during calendar year 1971, and which prohibited him from using head of household income tax rates for the same year. For the reasons set forth below, we affirm the judgment of the district court.

Soon after William Lyddan and Patricia Kopenhaver were married in February 1970 their marriage began to deteriorate. In July 1970, Kopenhaver, seeking equitable support for herself and her unborn child, sued Lyddan in Connecticut Superior Court for desertion. The court ordered Lyddan to pay his wife $600 per month as alimony *pendente lite*.

During 1971, despite the pending action, Lyddan and Kopenhaver lived in the same house. Although they maintained separate bedrooms and bathrooms, all entrances to the house were accessible to both, and both used the common areas on a regular basis. While they minimized their contact with each other, Lyddan and his wife occasionally shared the television room, attended social functions together, and on rare occasions had sexual intercourse.

Although Lyddan paid his wife pursuant to the court order, she refused to share in the household expenses. Lyddan not only paid for the household food; he also shopped for it. He furnished his wife with a car and maintained it for her as well. Lyddan even named her as the beneficiary of his life insurance policy.

Lyddan filed for divorce early in 1971 and obtained a judgment in his favor in July 1972. While he did not claim an alimony deduction for the payments to his wife on his initial 1971 return, when the IRS assessed him for underpayment of 1971 taxes he filed an amended return, claiming a deduction for the alimony payments in order to make up for the deficiency. When the IRS applied two subsequent overpayments to his original deficiency, Lyddan filed two separate refund claims totaling $9,635, based primarily on the claimed $7,200 alimony deduction. IRS denied his refund claim and this action followed.

The issues raised by Lyddan, both at trial and now on appeal, are (1) whether he was separated from his wife during 1971 within the meaning of I.R.C. § 71(a)(3) so as to entitle him to a deduction under I.R.C. § 215 for the alimony payments he made to her; and (2) whether he should be treated as "not married" under I.R.C. §§ 2(c), 143(b) (1976 & Supp. I 1977), so as to entitle him to use favorable head of household rates under I.R.C. §§ 1(b), 2(b) to compute his personal income tax for 1971. United States Magistrate Arthur H. Latimer found that these issues involved questions of fact and denied the government's motion for summary judgment. Judge Murphy then conducted a two-day bench trial.

Lyddan testified that the only reason he permitted Kopenhaver to reside in the same house was because the alimony order required him to do so, but the order contained no such requirement. Lyddan's son Jeffrey, who lived in his father's house during 1971, testified on his father's behalf, but the court found his testimony not worthy of belief and disregarded it. Kopenhaver also testified at trial, and the court accepted her testimony as to the instances of sexual intercourse, rejecting Lyddan's denial that they had cohabited at any time during 1971.

After reviewing the evidence in detail and making a number of subsidiary findings and determinations of credibility, Judge Murphy held that "the facts conclusively prove that the Lyddans were not separated, nor were they living apart during the calendar year of 1971 but were living together in one home, married, but

* Of the United States District Court for the Southern District of New York, sitting by des- ignation.

with hatred and contempt for each other." Accordingly, Judge Murphy held that Lyddan was not entitled to an alimony deduction under § 215. He further found that Kopenhaver was a member of Lyddan's household during 1971, so that Lyddan could not be considered "not married" within the meaning of I.R.C. §§ 2(c), 143(b) and was therefore not entitled to use head of household tax rates for 1971.

On appeal, Lyddan argues that the district court's judgment should be reversed because its findings were clearly erroneous and because the court erred in not upholding appellant's claim which was based on the facts and holding in *Sydnes v. Commissioner,* 577 F.2d 60 (8th Cir.1978). The government contends that the district court should have ruled as a matter of law that appellant was not entitled to the deduction or to the favorable tax rates, and that in any event, the court's findings were not clearly erroneous.

■ It is familiar law that a district court's factual findings will not be set aside on appeal unless "clearly erroneous", Fed. R.Civ.P. 52(a); *see Pullman-Standard v. Swint,* 456 U.S. 273, 287, 102 S.Ct. 1781, 1789, 72 L.Ed.2d 66 (1982); *Snyder v. Four Winds Sailboat Centre, Ltd.,* 701 F.2d 251, 253 (2d Cir.1983), and this rule applies regardless of whether these findings are ultimate or subsidiary findings. *Pullman-Standard,* 456 U.S. at 287, 102 S.Ct. at 1789. Under these standards, the facts before us would very likely pass muster. We do not decide the point, however, because the issues on this appeal should be resolved as a matter of law, not as a matter of fact. Judge Murphy also thought that the issue should have been resolved on summary judgment based upon the undisputed fact that the residences of Lyddan and Kopenhaver were not geographically separate. Having heard the evidence, however, Judge Murphy determined the subsidiary issues of fact and assumed that the magistrate's decision denying summary judgment, which had been adopted by Chief Judge Daly, was the law of the case. Without resolving whether Judge Murphy was obliged to de-

fer to the prior decision denying summary judgment, we simply note that this court is not precluded from addressing the issue.

In our view, the unpleasant trial which took place before Judge Murphy was entirely unnecessary because the uncontested facts established in advance of trial that Lyddan and Kopenhaver were not separated and living apart, but instead were living in the same residence. Consequently, Lyddan was precluded from deducting alimony payments under § 215 as well as from using head of household tax rates.

Section 215 allows a husband to take a deduction only for amounts includable as income to his wife under § 71. Section 71(a)(3) provides that a wife's gross income includes periodic payments received pursuant to a decree requiring a husband to make such payments for his wife's support or maintenance. But this provision on its face applies only if the wife "is separated from her husband". *Sydnes,* 577 F.2d at 62; *see* S.Rep. No. 1622, 83d Cong., 2d Sess. 171, *reprinted in* 1954 U.S.Code Cong. & Ad. News 4621, 4805. It follows then, that Lyddan's alimony payments were deductible under § 215 only if Kopenhaver was "separated from" Lyddan.

Lyddan argues that just because a husband and wife reside in the same dwelling does not preclude a finding that the wife is separated from her husband. He relies on *Sydnes,* an Eighth Circuit case which held that the issue of separation presents a factual question and that circumstances may exist where a husband and wife can live separately in the same residence. The court based its conclusion on the fact that "[n]either the statute nor the regulations specifically state that in order to live separately or apart the parties cannot occupy separate quarters in the same residence." 577 F.2d at 62. We respectfully disagree with *Sydnes'* conclusion that a fact issue can be presented when the couple occupies the same residence.

The relevant Treasury regulations specify that § 71(a)(3) applies only where husband and wife "are separated *and living apart.*" 26 C.F.R. § 1.71–1(b)(3)(i) (1983) (emphasis

added). The Eighth Circuit's interpretation that "separated and living apart" could conceivably mean living apart in the same residence is in our view an unnecessarily strained and unduly expansive reading of this regulation. We think the phrase requires a geographical separation and means living in separate residences.

Such an interpretation provides an easily recognized, quickly applied standard for the tax deduction. A federal court should not have to inquire into the intimate, sometimes sordid details of a dissolving marital relationship in order to administer federal tax policy. *Sydnes v. Commissioner,* 68 T.C. 170, 176 (1977), *rev'd in part,* 577 F.2d 60 (1978); *see Metzger Trust v. Commissioner,* 693 F.2d 459, 467 (5th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3537, 77 L.Ed.2d 1388 (1983). Nor should the outcome of a contested deduction depend on a factual inquiry that probes so deeply into the intimate living details of a now-estranged couple.

The complicated and unpleasant factual scenario of the case before us, which produced a trial described by Judge Murphy as a "nightmare", clearly demonstrates the need for a clean, "bright line" test. To avoid other drawn out replays of bitterly contested divorce trials and the resolution of future similar tax issues, we hold that before an alimony deduction can be allowed under I.R.C. § 215, the husband and wife must have lived in separate residences during the relevant period. We further hold that a husband cannot qualify for head of household tax status when he and his wife occupy the same residence.

Affirmed.