118 T.C. No. 24

UNITED STATES TAX COURT

THOMAS WILLIAM MCADAMS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12763-00.                Filed May 15, 2002.

P married his wife (W) in 1947.  P and W were not legally separated or divorced.  During 1998, W resided in Boise, Idaho (Boise address).  During 1998, P stayed at the Boise address in excess of 30 days.  P and W maintained separate bedrooms at the Boise address.

In 1998, P received $11,181.60 in Social Security income.  P filled out the Social Security Benefits Worksheet associated with his 1998 tax return.  P listed $25,000 as his "base amount" because he was married and believed that he lived apart from W for the entire year.  On his 1998 tax return, P claimed "married filing separately" status, reported $11,181.60 of Social Security benefits, and reported $0 as the taxable amount of his Social Security benefits.

In the notice of deficiency, R increased P's interest income by $52 and reduced P's "base amount" to zero, thereby increasing the taxable amount of P's Social Security benefits.

Held:  For purposes of sec. 86(c)(1)(C)(ii), I.R.C., "live apart" means living in separate residences.  P and his wife lived in the same residence at least 30 days during the taxable year in issue. Accordingly, P did not live apart from his spouse at all times during the taxable year, and P's "base amount" pursuant to sec. 86(c)(1), I.R.C., is zero.

Held, further, sec. 86, I.R.C., is not unconstitutional.

Thomas William McAdams, pro se.

Kay Hill, for respondent.

VASQUEZ, Judge:  Respondent determined a deficiency of $1,106 in petitioner's Federal income tax for 1998.  After concessions,[1] the issues for decision are:  (1) Whether petitioner did not "live apart" from his spouse at all times during 1998, and (2) whether section 86[2] is unconstitutional.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference.  At the time he filed the petition, petitioner resided in Ninilchik, Alaska.

As of the time of trial, petitioner was 74 years old and retired from the U.S. military.  Petitioner has a bachelor's

---

[1]  Petitioner concedes that his correct amount of interest income for 1998 was $530 and not $478.64 as reported on his 1998 Federal individual income tax return.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue.

degree in social work and a master's degree in human relations. During his last 22 years in the military, he taught classes about race relations and nuclear weapons at the Command General Staff College in Fort Leavenworth, Kansas.

In 1947, petitioner married Norma McAdams. During the year in issue and up to the date of trial, petitioner and Mrs. McAdams were married. As of the date of trial, petitioner and Mrs. McAdams had not legally separated.

During 1998, Mrs. McAdams resided at 4802 Shirley Avenue, Boise, Idaho (Boise address). Petitioner's two children, four grandchildren, and two great-grandchildren all reside in Boise, Idaho.

During 1998, petitioner used the Boise address as a mailing address. Petitioner received mail and telephone messages at the Boise address. Petitioner kept "things" at the Boise address.

From approximately April 15 through October 15, petitioner lived in Alaska. During the rest of the year, petitioner resided in "the lower 48"--i.e., in the continental United States. When in the lower 48, petitioner traveled in a "fifth-wheel" trailer to Wyoming, Arizona, Utah, Nevada, and California. When he was in Boise, he stayed at the Boise address.

During 1998, petitioner stayed at the Boise address in excess of 30 days. He parked his fifth-wheel trailer at the

Boise address and slept inside the house located at the Boise address.  Petitioner and Mrs. McAdams maintained separate bedrooms at the Boise address.

During 1998, petitioner's main source of income was his military retirement pay.  During 1998, petitioner also received Social Security income in the amount of $11,181.60.  Petitioner received a Form SSA-1099, Social Security Benefit Statement, for 1998 reporting "Benefits Paid in 1998" and "Net Benefits for 1998" in the amount of $11,181.60.

Petitioner filed his 1998 Federal individual income tax return claiming "Married filing separately" status.  When he prepared his 1998 tax return, petitioner filled out the Social Security Benefits Worksheet.  Petitioner listed $25,000 as his "base amount" because he believed that he lived apart from his spouse for the entire year.  On his return, petitioner reported $11,181.60 of Social Security benefits and zero as the taxable amount of his Social Security benefits.

In the notice of deficiency, respondent increased petitioner's interest income by $52 and reduced petitioner's "base amount" to zero, thereby increasing the taxable amount of petitioner's Social Security benefits to $9,218.

## OPINION

Section 86 provides for the taxability of Social Security benefits pursuant to a statutory formula.  If a taxpayer's

"modified adjusted gross income" plus one-half of the Social Security benefits received during the taxable year exceeds the "base amount", then a portion of the taxpayer's Social Security benefits are includable in gross income.  Sec. 86(a) through (d).

A.  Base Amount and Living Apart at All Times During the Taxable Year

Section 86(c)(1) provides that for purposes of section 86, the term "base amount" means:

(A) except as otherwise provided in this paragraph, $25,000,

(B) $32,000 in the case of a joint return, and

(C) zero in the case of a taxpayer who--

(i) is married as of the close of the taxable year (within the meaning of section 7703) but does not file a joint return for such year, and

(ii) does not live apart from his spouse at all times during the taxable year.

When he prepared his 1998 tax return, petitioner filled out the Social Security Benefits Worksheet.  Petitioner listed $25,000 as his "base amount" because he was married and believed that he lived apart from his spouse for the entire year. Respondent contends that petitioner did not live apart from his wife at all times during the taxable year within the meaning of section 86(c)(1)(C)(ii).  Whether a taxpayer did not "live apart" from his spouse "at all times during the taxable year", within

the meaning of section 86(c)(1)(C)(ii), is an issue of first impression.[3]

We do not find any ambiguity in the language "at all times during the taxable year." "All" means "whole", "entire", "each and every one", or "each and every thing".[4] Webster's II New Riverside University Dictionary 93 (1994).

Neither the statute nor the legislative history defines what "live apart" means. See S. Rept. 98-23, at 27 (1983), 1983-2 C.B. 326, 328; H. Conf. Rept. 98-47, at 122 (1983), 1983-2 C.B. 336, 340. Similar language to that contained in section 86(c)(1)(C)(ii) is contained in sections 22(e)(1), 66(a)(2)(A), 152(e)(1)(A)(iii), 219(g)(4)(B), and 469(i)(5)(B)(ii). Therefore, we look to the case law interpreting the phrase "live apart" contained in those sections.

In <u>Costa v. Commissioner</u>, T.C. Memo. 1990-572, in 1970 the taxpayer and her husband purchased a residence located in Fairfax, California (Fairfax residence). In 1982, as a result of

---

[3] The resolution of this issue does not depend on which party has the burden or proof. We resolve this issue on the basis of a preponderance of evidence in the record.

[4] We note that this construction is supported by the legislative history, which provides that the base amount is "zero in the case of a married individual filing a separate return, unless he or she lived apart from his or her spouse for the <u>entire</u> taxable year". S. Rept. 98-23, at 27 (1983), 1983-2 C.B. 326, 328 (emphasis added).

marital problems, the taxpayer moved out of the Fairfax residence. During 1982, the taxpayer's husband also moved out of the Fairfax residence. In 1983, the taxpayer resumed residing at the Fairfax residence. In 1984, the taxpayer's husband visited the Fairfax residence several times on an intermittent basis, he used the Fairfax residence address for receiving mail, he kept documents and clothes there, he received telephone messages there, he had a key to the Fairfax residence, and he came and went at his convenience. The taxpayer did not file a joint return with her husband for 1984. The taxpayer did not obtain a formal termination or separation, and as of the time of trial the taxpayer was still legally married to her husband.

We concluded that, for purposes of section 66(a), the taxpayer "did not live apart at all times during the year as required by statute" for 1984. Costa v. Commissioner, T.C. Memo. 1990-572. We based our holding on the fact that during 1984 the taxpayer's husband intermittently resided at the Fairfax residence. Id.

In Dawkins v. Commissioner, T.C. Memo. 1991-225, during 1987 the taxpayer and his wife were in the process of obtaining a divorce. During 1987, the taxpayer had not obtained a legal separation, and the taxpayer, his wife, and his three children all resided in the same household. The taxpayer and his wife, however, maintained separate quarters under the same roof.

We concluded that, for purposes of section 152(e), the taxpayer and his wife were not "living apart" because they lived under the same roof. <u>Dawkins v. Commissioner</u>, T.C. Memo. 1991-225. In determining what "living apart" meant, we referred to several cases that considered what living apart meant in the context of alimony payments and being separated (sections 71 and 215). <u>Id.</u> In those cases, courts held that "living apart" meant living in separate residences. <u>Lyddan v. United States</u>, 721 F.2d 873, 876 (2d Cir. 1983); <u>Washington v. Commissioner</u>, 77 T.C. 601, 605 (1981) (a Court-reviewed decision, disagreeing with the U.S. Court of Appeals for the Eighth Circuit's holding in <u>Sydnes v. Commissioner</u>, 577 F.2d 60 (8th Cir. 1978), revg. 67 T.C. 170 (1977), that taxpayers could be treated as separated when both are living under the same roof); <u>Coltman v. Commissioner</u>, T.C. Memo. 1991-127, affd. 980 F.2d 1134 (7th Cir. 1992).

Additionally, we have explored the concept of living apart as it related to sections 2 and 7703. As it relates to these sections, we held that living apart required geographical separation and living in separate residences. <u>Chiosie v. Commissioner</u>, T.C. Memo. 2000-117; <u>Hopkins v. Commissioner</u>, T.C. Memo. 1992-326.

Furthermore, prior to amendment by section 121 of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2109, section 85(b) defined a "base amount" for purposes of computing the taxable

amount of unemployment compensation similarly to section 86(c)(1). Section 1.85-1(b)(4), Income Tax Regs., which was still in effect during the year in issue, provided:

> A taxpayer does not "live apart" from his or her spouse at all times during a taxable year if for any period during the taxable year the taxpayer is a member of the same household as such taxpayer's spouse. A taxpayer is a member of a household for any period, including temporary absences due to special circumstances, during which the household is the taxpayer's place of abode. A temporary absence due to special circumstances includes a nonpermanent absence caused by illness, education, business, vacation, or military service.

We conclude that for purposes of section 86(c)(1)(C)(ii) "living apart" means living in separate residences.

Petitioner contends that because he and his wife maintained separate bedrooms this is sufficient to find that they "lived apart". We disagree. See Dawkins v. Commissioner, supra. We decline to explore the quality of a marriage, or to infer some form of constructive absence of one spouse, when the spouses live under one roof. See Lyddan v. United States, supra at 876; Chiosie v. Commissioner, supra.

Petitioner also argues that he merely "visited" his wife and did not live with her. In Costa v. Commissioner, supra, we concluded that intermittent visits to the taxpayer's home by the taxpayer's spouse were sufficient to find that the spouse and the taxpayer did not live apart. In the case at bar, petitioner's "visits" lasted in excess of 30 days. Even if we term petitioner's stay at the Boise address a visit, petitioner

resided in the same house with his wife during this time.

We conclude that for purposes of section 86(c)(1)(C)(ii) petitioner did not live apart from his spouse at all times during the taxable year. Accordingly, his "base amount" for 1998 was zero.

B.    Constitutionality

Petitioner's final argument is leveled at the constitutionality of section 86. In essence, petitioner questions the fairness of section 86. In San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 41 (1973), the U.S. Supreme Court noted that "No scheme of taxation, whether the tax is imposed on property, income, or purchases of goods and services, has yet been devised which is free of all discriminatory impact." We have repeatedly held that section 86 does not suffer any constitutional infirmities. Thomas v. Commissioner, T.C. Memo. 2001-120; Clark v. Commissioner, T.C. Memo. 1998-280, affd. without published opinion 187 F.3d 641 (8th Cir. 1999); Roberts v. Commissioner, T.C. Memo. 1998-172, affd. without published opinion 182 F.3d 927 (9th Cir. 1999). Accordingly, we deny petitioner's constitutional claim.

To reflect the foregoing,

Decision will be entered

for respondent.